Case number 20-3482 John Doe v. Oberlin College at all. Oral argument is not to exceed 15 minutes per side. Mr. Murray for the appellant. Good morning. I would respectfully request to reserve three minutes for rebuttal. Your honors, there has only been one private university or college in the country that a federal court has openly questioned as to whether it would ever be willing to acquit a male student of violating its sexual misconduct policy. That one private college is Oberlin. The one court that raised that question was a panel of judges from this honorable court in a June 29, 2020 decision. Just as the Wizard of Oz told Dorothy, pay no attention to that man behind the curtain, Oberlin College asked you to pay no attention to which private college is again being sued for sex discrimination in violation of Title IX. Oberlin asserts that because every federal court to consider the issue of whether a private college can be considered a state actor in the handling of its investigation of sexual misconduct is held in the negative, that so too must this honorable court. But what the law requires is for each case to be decided upon its own facts. And in reviewing the facts that the appellant has set forth in his complaints in this matter, it is significantly more than what... Appellant's damage. He was vindicated. He was. Yes. He was, was he not? He was, your honor. So what's his damage? His damage is the emotional harm that he went through by going through a constitutionally unfair process that previously was resulting in a conviction rate of over a hundred percent. But he had due process and that's all he's entitled to, right? He wasn't provided due process, your honor. They told him what was wrong. He had a hearing. He could bring witnesses in. Isn't that the essence of due process? No, your honor. It was how the process was fundamentally flawed and unfair and without due process from the start. Tell me how. The accuser in this matter, and this is all set forth in our complaint. Yeah, but your complaint has a lot of conclusions too. Just tell me in one sentence how, you know, they get a complaint that your client did something improper and that's correct. The complaint was received by the university, I think on approximately December 12th of 2019. And the complaining witness asked the university to not notify my client immediately. So he wasn't given immediate notice. She asked the university to wait until after all the students come back from winter break in request to notify him of the allegations. And he's first notified on February 4th. More than seven weeks had passed. The university in that time period. Okay, what harm happened then? Evidence was destroyed. Surveillance video from their dorm. But he was vindicated, so it doesn't matter, does it? If he was convicted, I think you have a case. He might not have had to go to trial. Had they preserved that evidence, he might not have been put through six or four months, five months. This is an article three court. We don't deal with what might have. What did happen? And your honor, there's also the issue that there was an agreement that was reached between the university, the complaining witness, and my client where this would go through the informal resolution route. But your client ultimately agreed to go through the formal, did he not? He didn't have a choice but to go through the formal. What happened was my client complained to the university that the student who was claiming him, who was alleging that he sexually assaulted her, was going around and telling other students that he was the subject of a Title IX investigation and that he had sexually assaulted her on two occasions. And upon being notified of that complaint, the complaining witness told the university she no longer wanted to go through the informal process. And now she wanted him- Aren't you leaving out, counsel, a pretty significant factual piece of this case that I noticed was not in any of your briefing or not discussed? The fact that Jane made this decision after your client hired a private investigator who came in improperly into the dorm areas and interviewed her. And wasn't it after she was subject to that interview by someone who did not disclose that they were acting on behalf of your client that she then decided to go with a formal proceeding? I mean, isn't that a correct statement of the factual record? Your Honor, even after Jane Rowe was interviewed by our private investigator, she continued to indicate to the university that she wanted to go through the informal process. And it wasn't until after it was disclosed that my client was accusing her of violating the policy and retaliating by disclosing her allegations to other students and telling other students that he was subject to a Title IX investigation. At that point in time, she changed and asked to back out of the agreement that had been reached between the university and her. And that was almost, I think, more than two weeks after the private investigator had interviewed her. Well, are you saying that was improper for the university or college to have agreed to a formal hearing? Yes, because it's our position that there was an oral agreement. There was a binding contract between the complaining witness and the university. But the two parties to the contract agreed to modify it. I guess my view of contracts is different than yours. My client never agreed to go through the formal route. He didn't have a choice. But the problem with the timing issue, I think, I find concerning still. But also, isn't the essence of the type of resolution that is available something that the complainant has a right to say? I mean, it is always at the complainant's right to request a formal investigation because during those preliminary stages, it is the college that's supposed to be investigating, right? That's correct. She does have that right under the policy. But the question becomes, at what point in time is she permitted to revoke her prior agreement to go through an informal resolution process? She had indicated the university for weeks, possibly even months, that she wanted this to go the informal route. And it's only upon being notified that she's being accused of being in a violation. And that injured your client in what way again? Because then he had to go through the formal resolution process, which resulted in him having to go through this. But you said she has the right. So it's the delay in her exercising this right that you claim you were damaged. And I'm just curious what it was. He was induced. He was told that she was willing to go through the informal route. And he was asked, after he was communicated that to him, and what the procedure would be and what the requirements would be for this to be handled informally, he agreed to it. But that's a matter, it's not a matter of his agreement. He was the subject of the investigation. And whether it's formal or informal is between the complainant and the college. But I think that's not the real issue here. The thing that concerns me is this argument or assumption that Oberlin is a state actor. I don't find any support for that. What is your basis of claim that the court improperly dismissed the due process claim on the basis that Oberlin is not a state actor? Well, first, Your Honor, it was a summary dismissal. This circuit has always held that a party has to be given notice and at least 10 days notice and a meaningful opportunity to amend its complaint or to respond. We weren't provided that. Even if this honorable court were to agree with the appellee and say that we were notified on March 30th, the court's dismissal entry was on April 7th, which would be nine days. We had clearly indicated to the court during the April 2nd telephone conference that we wanted an opportunity to brief this issue. And I think what separates this particular case from the 11 cases that Oberlin cites to in their brief where a private college wasn't found to be a state actor, is again, we're talking about the only private college in the country that a federal court has ever questioned whether that college would ever- You know, Counselor, I understand the argument. I'm struggling with the fact that there might be another case in which the college was questioned. But the key issue to being a state actor is not that your actions were questioned otherwise, but whether you are in fact a state actor under the law. And I understand your argument. It's a fair argument that you didn't have the timeframe that was normally provided, but I'm still not seeing what would be your support for claiming that Oberlin is a state actor when government pressure and the ability to take away Title IX funding is consistent throughout all those cases. But it's different in this particular case because this is the only one of those cases where the Department of Education actually publicly stated, we're gonna conduct an investigation into you. And they did this in November of 2015. And it wasn't just an investigational case. They said it was gonna be a systemic investigation into their policies and procedures. Well, how does that make Oberlin- How does that make it a state actor? What is it about this school that makes it a state actor? It was a more direct threat of having all of their funding stripped away. It wasn't this dear colleague letter that was sent out in 2011 to all the schools where it was just the mere possibility that your federal funding can't be taken away. This was a, it was well-documented and Oberlin's response to this was to send out its statement in 2016. Hey, we've had a hundred cases come through. Every one of the cases we sent through the formal resolution track, we've found the male student responsible for. And they started developing procedures and policies that resulted and a hundred percent- How does that make them a state actor? I understand your concerns about the college, but what makes that a state actor? At this stage of the proceedings, we have to show that it's plausible that they're a state actor. And I think that if we're given the opportunity to conduct some discovery, we would be able to come up with the evidence that we would need to survive a summary judgment motion on this. So are you saying it was a federal actor or a state actor? I'm saying that the federal government turns them into state actors and puts the pressure on them to essentially be law enforcement and to investigate these cases, to adjudicate these cases based upon the policies that the federal government was probably communicating to Oberlin when they're down there, when the Department of Education is down there on campus, looking through their policies and procedures and probably telling them, what's good and what's bad. And if you don't do X, Y, or Z, you're going to lose your funding. So they're an arm of the federal government? I think they're an arm of both governments, both state and federal government. Well, tell me how the state was involved. Well, the state's involved because they're essentially having these investigators work as local law enforcement and conduct investigations and prosecute these students. And they're having them design policies that are designed to result in 100% conviction rate. Okay, so I'm trying to understand, you're saying that Title IX was enforced by the state in this back in 2015, that Ohio did this? I'm asking you whether they've become an arm of the federal government or Ohio. That's all I'm asking. Because of all of this. I think they've become an arm of both governments. So I asked you, how did Ohio get involved? I don't think Ohio specifically got involved in these cases, but Ohio, the state of Ohio gives the college and university funding too. And that same funding could be subject to being revoked. But isn't that the argument in every one of these cases that it's not unique to your situation? That's always an issue in Title IX. This is not an enforcement of Ohio state laws. This is an enforcement of the investigatory provisions of Title IX. Right? So how, I asked again, how are they state police? How are they enforcing state requirements to make them a state act? Your Honor, they have the ability to refer these matters to local law enforcement. And that makes sense. Anybody who refers things to local law enforcement now is a state actor? It's not just anybody. You're talking, it's individuals at the school who are conducting an investigation, have the ability to turn over the entire contents of their investigation to local law enforcement if they want to. If they were to turn the complaining witnesses allegations over to law enforcement, it would go to local law enforcement. It wouldn't go to the federal government. Local law enforcement would be the one that would handle this. It would handle a Title IX investigatory complaint? Not the Title IX investigatory complaint, but if there were criminal charges that would be brought in one of these cases, those charges would be brought by local law enforcement. At local law enforcement's choice, right? At local law enforcement's choice, right. Okay, thank you. Okay. So just briefly, that's your due process claims. Um, what were your separate claims? There was a claim for violating Title IX based upon selective enforcement. There was a claim of breach of contract. There was a claim of negligence as to how they handled their investigation. It was a breach of the covenant of good faith in dealing. So on, and the judge dismissed, apart from the issue of the state after, the judge dismissed the other claims on ripeness? Correct. Okay. Do you want to just briefly address why they were ripe? I believe they were ripe and that we cited a case that involved the University of Michigan, which I've acknowledged is a public school. And, you know, it addressed these issues. And, you know, one, when a student is, you know, brought into one of these investigations, they face the risk of immediate expulsion, potentially the immediate removal from campus. You know, the second issue, it is the mere allegation of committing a sexual assault. You know, that goes to somebody's reputation and integrity. And that harm is immediately apparent. The additional facts, you know, weren't necessary at the time that we filed the complaint as it relates to some of these claims. The two month delay between the complainant reporting her allegations and asking for the university to sit on it for two months, the loss of the video surveillance evidence that could have been used to exonerate my client from the start. The issue of the complainant saying that on one of the occasions, both she and my client were impaired. Under Oberlin's policy, both students would have violated the sexual misconduct policy by engaging in sexual conduct with another who was impaired. And yet my client was the only one who was put through this process. She wasn't, didn't have to go through that. That may be wrong, but that's not a, that in itself is not damaging the client. That she wasn't also invested. Well, it goes to, it shows their gender bias as to how they're investigating and handling these cases. How can you say it's okay for a female student to have sexual conduct with the male student who she's saying is too impaired to consent under what's- So that's your selective enforcement claim, right? That's one of them. And then allowing her to, you know, back out of the agreement that had been negotiated. Okay. And I have, okay. I was muted before I didn't realize it. So on this, allowing her to back out, was there a written, was there something written that everybody signed to follow the informal procedure? I don't believe that there was a written document that was signed between everybody. Okay. And is there a written procedure that sets out the informal procedure that says that either that you can always change your mind or that you cannot change your mind? There's a, in this case, there was a 2019 sexual misconduct policy. And it's our position that there's no language in that policy that would allow her to change her mind after there's been an agreement between everybody to go the informal route. Okay. So it doesn't say you can, and it doesn't say you can't. That's my understanding of the policy from my review. Okay. I did it silent. Do you still have your rebuttal? But does anyone have any questions that they want to ask? No. Okay. Thank you. Thank you. Shall I proceed? Yes. Good morning to the panel. David Wallace on behalf of Oberlin College, Oberlin College Board of Trustees and Rebecca Mosley. Before I launch into my prepared remarks, I just want to say that the policy absolutely says that either party may opt out of informal resolution at any time. Just to answer your last question, Judge White. It's our position, obviously, that the district court's dismissal of appellant's claims was entirely proper under controlling law and should be affirmed. The district court had no alternative under existing precedent, but to dismiss Doe's 1983 claim because Oberlin is a private college and not a state actor. The dismissal was also pragmatic. That relate to the Tingler requirements that would require notice and an opportunity to amend and an opportunity to address the issue.  Let me just change my spot in my outline. As we all know, the Sixth Circuit case in Twingler identified five factors or five circumstances that need to be present in order for a sua sponte dismissal on the merits. And of course, as it relates to the 1983 claim, that claim was dismissed on the merits because it was dismissed with prejudice. Those five factors are, let me check my cheat sheet, if you don't mind, that there was service of the complaint on the defendant. I don't think there's any dispute here that that occurred. Oberlin removed the case from state court to federal court and actively participated in the two hearings that occurred telephonically. The court needs to notify all parties of its intent to dismiss. That happened here on March 30th. It was made very clear that the court did not view that Oberlin was a state actor and intended to dismiss with prejudice or without prejudice, I don't recall, but intended to dismiss the due process claim. The plaintiff needs a chance to amend or respond to the reasons given. And in this case, the court granted a plaintiff leave to amend and plaintiff did amend, but frankly failed to address in its amendment any of the due process arguments. The case also requires that the defendant get a chance to respond or file an answer. We chose not to file an answer to the amended complaint, but did respond, actively responded in the hearing that took place on April 2nd. And then the last requirement of Tingler is that the dismissal order provides the reasons for the dismissal. And clearly the district court did that here. So court gives what has been considered adequate notice. Well, I want to address that because I heard counsel during argument suggest that there's a 10 day requirement. I am not aware of any requirement in Tingler that suggests that there's a specific number of days that need to be provided. This did all happen very quickly. I can see that, but it happened after they were given notice that they were not, that the court was not viewing Oberlin as a state actor. And it happened after they were given a chance to amend, after they did amend. So I recognize it's a tight timeframe, but I do believe that the circumstances here meet the requirements of the Tingler versus Marshall case. All right. So I want to make another thing clear, and that is there are, there are different requirements that apply to the dismissal without prejudice of the other claims that the Title IX claim and the state law claims. Those requirements are set forth in the Morrison case, Morrison versus Tamano. And all that is required there is that the plaintiff was given a chance to amend the complaint or respond to the notice of intended dismissal. Again, they asked for leave and they did amend. And the second requirement is that the dismissal order needs to specify the reasons for the dismissal. In this particular case, the judge specified that he viewed those other claims to not be ripe. Remember, at the time this complaint was filed, the college was less than a month into its investigation. And there had been no hearing of any kind, no finding of any responsibility. And I think, frankly, that really is what sets this case apart in some ways from almost all of the other cases I've seen. Usually a Title IX respondent who's dissatisfied with the outcome of a case files a complaint and comes to court and seeks to prove that it was either selective enforcement or another violation of Title IX. In this case, the appellant chose to come to court before there had been any kind of hearing, before there had been any kind of finding of responsibility. And Judge Polster said, wait a minute, this is a mandated investigation. The college has no choice but to conduct an investigation. And so he said, and these were his exact words, I'm going to let this thing play out. Let's see what happens here. Maybe this will all be moot. And it was as if he knew what was going to happen, because when it did play out, what happened was they went through a hearing. The appellant had a chance to present his evidence at the hearing, as did the complainant. The three-person panel at Oberlin, who was charged with hearing this particular allegation of sexual misconduct, determined that Mr. Doe was not responsible for a violation of the policy. And that did mute all those other claims. So, and this idea that... Counsel, how does it, how does it moot the selective enforcement claim? And why is that claim not ripe? Wasn't it ripe at the time? I mean, the university had already done what it was going to do in the sense that it, it only charged him and it didn't charge her when she violated the policy assertedly by speaking to other people. That was already done. Why is that claim moot? And why wasn't it ripe? Okay, there was a lot there, Your Honor. I'll try to remember all of it, but maybe it's easier if I start at the end. I don't believe that the policy, I could be mistaken, but I don't believe the policy takes away anyone's right to speak about what has happened to them. And in this case, the complainant, Jane Rowe, felt that she had been abused by Mr. Doe in a sexual way. And I don't believe there's anything in the policy that says she's not allowed to tell anybody that, except for the Title 19. So I think that was one of your questions. Oh, so it is because some, some schools do say don't talk about it. Um, so she was allowed to talk about the fact that there was an ongoing Title 9 investigation? Uh, there's a difference between telling someone what occurred and whether there is a Title 9 investigation ongoing. But his allegation, I think, is that she told people that there was an ongoing Title 9 investigation. I thought his allegation was that she told people that he was a rapist. Okay. And then why, why wasn't it right at the point he filed his complaint? The Title 9 claim, Your Honor? The selective enforcement claim. Okay, selective enforcement. Well, first of all, I want to make something clear. The, um, the appellant never asked the, uh, the college uh, never filed a complaint with the college regarding the fact that she had also been drinking and therefore she should be subject to a Title 9 investigation. That never occurred. Their argument, as I understood it, and I'm not sure I do, was that, um, she violated Title 9 by retaliating by taking away her consent to the informal process. But as I've said, the policy specifically contemplates that either party can revoke the notion of going forward informally at any time. And quite frankly, the appellant brought this on himself when he decided to hire a private investigator, sneak her into the dorm room. And by the way, the private investigator did not identify herself as an investigator for Mr. Doe. And frankly, she was under the impression she was talking to someone who was investigating the complaint on behalf of the Title 9 team. And it was only after she found out that this, this sleight of hand had taken place, that she said, enough with this guy. You know, frankly, she was trying to help him out by going forward on an informal basis. But when he did that, she said, I am not going to go forward on an informal basis anymore. All trust was lost at that point. I, I'm still waiting to hear why it wasn't right. Why it wasn't right. Well, let's go to the right. Let's go to the requirements of what makes something right. And I'll address each intern. Just give me one second. I apologize. All right. As I understand the law on rightness, the court, the district court was to consider three factors. One, the likelihood that the harm alleged by the plaintiffs will ever come to pass. Okay. Well, he, he had already gone through the selective enforcement. I respectfully disagree. He had gone through, he was going through an investigation. It was not an enforcement. He was going through an investigation. So the harm would be if he, the harm would be if he was found responsible, but that had not yet come to pass. The second factor that the district court was supposed to look at, and this is very important here, is whether the factual record was sufficiently developed to produce a fair adjudication on the merits. And the problem that the judge Polster had here was the investigation was just at its beginning stages. And so the factual record was not sufficiently developed for fair adjudication. And then the last factor, hardship to the parties, judicial relief is denied at this stage. I would respectfully submit that it was not an undue hardship to appellant to have to go through an investigation that is required by law. The college is required by law to undertake that investigation. Uh, so I would say that the balance did not weigh in favor of the claim. Back up and if you could back up and explain to me why those allegations of rightness seem to me to sound about the whole process, but your opposing counsel is arguing about selective enforcement claim. So your first answer to that was he never filed a complaint. Tell us exactly what happened and why that doesn't qualify as a complaint about not not bringing a chart, not bringing an investigation as to Jane Road. Well, I don't know if I can put much more meat on that bone. Your Honor, I'll try. But essentially the policy provides the mechanism for making a complaint and then what happens after a complaint is made. And the only person who ever suggested that this that something untoward it had happened here and that perhaps Jane should be charged was a remark made by counsel to the college in a meeting with the college. The policy doesn't provide for a complaint to be made by counsel. It provides for the student to make a complaint. One was not made here. Thank you. Thank you. Well, I guess my time is basically up. I'll wind up. Obviously, we think that the district court did the right thing. I would also point out with respect to every claim the 1983 claim they were dismissed with prejudice. If the appellant really believes those claims have merit, it certainly has a right to bring them again. Without prejudice claims. Correct. Correct. So that's all I have, unless you have any further questions for me. Questions? Thank you. Thank you. Thank you. Counsel? Rebuttal? Yes, your honors. Counsel, I'm trying to understand your selective enforcement claim. Did John Doe ever file an actual complaint under Title IX proceedings against Jane Roe? Not as it relates to her engaging in sexual conduct with him while he was impaired. He did voice a complaint about the retaliation because there is. Through your statements, is that correct? Through our statements, correct. Counsel's statement. During his interview with the university, he was required to go through an interview and to meet with university officials regarding Jane Roe's complaint. And he appeared with counsel for that meeting. During that meeting, he voiced his complaint that she was violating the policy. There is we set forth on page 37 of our amended complaint. There is a privacy statement and there's a retaliation section in Oberlin sexual misconduct policy that prohibits what she did by going around and telling other students he's the subject of a Title IX investigation. He's the subject of Title IX disciplinary proceedings. She's prohibited from doing that. And she's also prohibited from retaliating against him by demanding based upon his complaint to the school that she was doing this. And she's in our position to retaliate by saying, hey, I want this to go formal now. And, you know, while. These were within discussions of her complaint, but nothing was ever filed under Title IX by your client claiming a retaliatory action or a selective enforcement action. Is that correct? Verbally, it was communicated just as she initiated this process by verbally disclosing it to her coach who was the Title IX affiliate at the university. She initiated the process against him the same way that we initiated we're attempting to initiate the process against her. Did he did he in this interview make those statements or was it argument by counsel? He he brought it up and it was discussed with counsel and the university. He was there. He was the one that was required to respond to the questions and voice voice his complaints. You know, you know, as it wasn't that she was telling people that he raped her. It was that she was telling people that there was a Title IX investigation ongoing. She was telling people both, but the issue of what you can't. Sorry, the violation of the policy is telling people he's the subject. He's going through these proceedings. We're going through the formal route. That's a violation of their policy. There is a privacy statement that clearly prohibits that conduct in their policy. And do you know whether she was? She was she present at that interview? No, the interviews were separate. The university met. You know whether she was told that he had made that complaint. It's our understanding that she was told that that complaint was made against her, that she was questioned about that. OK, and that's fair that she was questioned, right? Because I mean, that's another way of telling her you're not allowed to tell people that there's a Title IX investigation. But it's still a violation and they didn't, you know, subject her to any type of proceeding. And her response is OK, now I want to switch tracks and I want to go the formal route on this. And while the policy might say that either party has the ability to opt out of informal resolution at any point in time, and when it's some point in time, there has to be. What if it's six months after? What if it's after he's completed all of the requirements of the informal track and she still opt out and say, hey, I want this to go formal now. I mean, that doesn't make any sense. Once there's been an agreement among everybody that this is the resolve a certain way, it's got to go through that way. And how do you respond to your opposing counsel's statement that she did not find out about the investigator until after she had said, I want to go informal and then she found out about the investigator. And that was part of her decision making to go forward with a formal because of that action. One, we dispute that fact. It's our position. Our investigator fully disclosed who she was and who she was working for when she met with Jane Rowe. And we have a recording. Oh, did you place any evidence in the record of that other than your denial? We never had an opportunity, Your Honor. And here's the thing, we're talking about- You had a whole formal, you had a whole formal complete hearing, but there's never- There's nothing- You cannot point me to anything in the record where the investigator has made a statement or an affidavit that says, I disclosed that I was here on behalf of John Doe. Is it in the record? I'm sorry? You're talking about in the district corporate, we never had an opportunity. We didn't have a full- We didn't have a full hearing. We had a brief conference call with the corporate- But there was nothing and there was nothing before Oberlin because Oberlin was understood that this occurred and you placed nothing in the record before Oberlin that said this woman, this investigator disclosed who she was acting on behalf of. There's nothing in the record before Oberlin. I believe that there would have been something in the record with Oberlin. We were challenging her credibility- That's not my question. My question is, is there something in the record? Either here or in Oberlin that the investigator placed in the record that she had made full disclosure to Jane Rowe? Are you saying it came out of the hearing? I wasn't present for the entire hearing. The hearing was conducted by Zoom and I wasn't, even though my law firm was the law firm that was representing Mr. Doe during that investigation, but I know that there was a dispute about this and we're talking about Jane Rowe, who the panel found was not credible as it relates to her allegations that my client sexually assaulted her on two allegations. Her claim that our investigator failed to disclose who she was to her during this interview, I don't see why she's given the benefit of the doubt that she's being credible on that allegation. It's our position that our investigator would have fully disclosed that fact to her when she made her recorded statement from her and that would have shook him out. I'm sure it was... Was it on the recorded statement record? Yes. Now, you're telling me that if we got the recorded statement of that interview, it would include that investigator saying I am here on behalf of John Doe. That's easy to check. That is my understanding of what would be on that recording. Okay, thank you. I haven't listened to the recording myself. That's my understanding. That was... That's what's on it. Sir, one question. The retaliation is her talking about this hearing in public. Is that correct? That's correct. But your own investigator you paid money for, in fact, encouraged her to talk about it. Did he not? To her? Yeah, when he interviewed her, it wasn't the interview about what's coming up, what's going to happen. Your own investigator had her violate the policy you're complaining about. Is that true? No, because your honor, there's a difference between talking about the allegations that she's claiming my client sexually assaulted her on two occasions compared to going around and telling other students, hey, I thought... But he ran around and told the investigator and the investigator was your agent. Aren't you trashing the same spot? No, because there wasn't even a formal investigation that had been initiated against my client by the university at the time that that statement was obtained from her. I thought that the retaliation that you were claiming was that she changed from informal to formal. There are two bases of... So two things for retaliation. One, that she changed from informal to formal after being told of my client's complaint. The second is that she was retaliating against him by going around and telling individuals on campus, including his teammates... The investigator is part of the defense team. So what was she retaliating against at that point? That he was complaining, that he had lodged a complaint against her for violating the policy. Okay, so both of those events happened after he complained about her violating the policy on telling people about it. And in response to her... And in response to his complaining about it. That's what you're saying? Both the talking about it and the changing to formal. Yes. Were a response to his complaint. Yes. So she wasn't talking about it before he complained. We have no idea. She made these initial disclosures to the university right before winter break. And then she asked the university to sit on them, sit on her allegations until everybody came back after winter break in February before they notify him. So once everybody... Go ahead. So it's not making sense to me because she had to have been talking about the investigation being ongoing before he complained that she was talking about it. And so how could the talking about it be in retaliation for his complaint? There was a delay from December 12th, 2019, when she initially makes the allegation to February 4th, when he's first notified. The meetings with university officials, I think occurred like on February 24th. And it was... After that time period, she's going around telling people, hey, he's a subject of a Title IX complaint. He sexually assaulted me on two occasions. And then he complained about it at the meeting. So how can her talking about it before the meeting be retaliation for that? We don't know who she was talking to or whether she had disclosed anything to anybody before that meeting that happened on February 24th. Other than making a disclosure to her coach, who happened to be a Title IX representative for the school, we don't know who she was speaking with about it. But it's after she finds out that he's making an allegation against her, she starts telling... Okay. Any other questions? I have none. No. Okay. Thank you both for your arguments and the case will be submitted.